# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
    **Plaintiff,**

  v.                                                                                 **Case No. 09-CR-54**

**EUREKA HOPSON**
    **Defendant.**

## DECISION AND ORDER

Defendant Eureka Hopson filed a motion for modification of his sentence pursuant to 18 U.S.C. § 3582(c)(2), which allows the district court to reduce the prison term of a defendant sentenced based on a guideline range subsequently lowered by the Sentencing Commission. In its response, the government conceded defendant's eligibility but argued that the court should decline to grant a reduction in the exercise of discretion. Seeking further information on defendant's post-sentencing conduct, I obtained a report from the Probation Office, then permitted the parties to file supplemental memoranda. The matter is now fully briefed and ready for decision.

**I.**

Defendant pleaded guilty to attempted obstruction of commerce by robbery and attempted possession with intent to distribute 5 kilograms or more of cocaine. The charges arose out of an ATF sting operation, pursuant to which an agent, after receiving information that defendant was in the business of robbing drug dealers of their drugs and/or money, made contact with defendant posing as a cocaine dealer from New York and proposed robbing the agent's fictitious drug supplier. (PSR ¶ 10.) During his conversations with the agent, defendant

confirmed that he committed armed robberies of drug dealers and discussed how he did them. Defendant and the agent eventually agreed on a plan whereby they would rob 14 kilograms of cocaine from the supplier, which they would split. Defendant was to recruit others to participate in the robbery. (PSR ¶ 11.)

Defendant recruited co-defendant Xavier Turner, who in turn solicited several other young men to participate in the robbery. Turner and the others gathered at a residence, where defendant called Turner to discuss the robbery, including the possibility that they would rob the agent as well as the supplier. Turner and his group then left the residence to meet defendant, armed with two guns. Defendant was to bring a gun as well. (PSR ¶¶ 13-14.) They met defendant, then drove to the Mitchell Domes, where they met the agent. The agent addressed the group and confirmed that they were ready. Defendant instructed the others that the agent was not the target. (PSR ¶¶ 15-17.) The agent then led the men to another location, where all were arrested. Agents seized three loaded guns, one of which had defendant's prints on it. (PSR ¶ 18.)

Defendant appeared for sentencing on December 3, 2009. Then 31 years old, his pre-sentence report ("PSR") detailed a prior record including juvenile adjudications for robbery, operating a vehicle without owner's consent, and burglary. (PSR ¶¶ 46, 48-50.) In 1996, at age 17, he was convicted of 1st degree recklessly endangering safety (arising out of an incident in which he fired shots at the victim) and of possession with intent to deliver cocaine (based on police seizure of 27 corner cuts of crack cocaine and a loaded revolver), both as an adult. (PSR ¶¶ 51-52.) Sentenced to a total of 6 years in prison for these offenses, defendant was paroled in 1998 but revoked the following year following another shooting incident. In that matter, police responding to a shots fired complaint observed a vehicle with a bullet hole in the

front windshield. They pulled the car over, and three persons, including defendant, fled on foot. As he ran, defendant threw a .357 caliber revolver into some bushes, and officers recovered a 12 gauge shotgun and .25 caliber semi-automatic pistol from the car. Defendant later stated that gang members fired a shot at his car, hitting the passenger side front end; he went home to relax for a while but later returned to the scene with two others, armed, and when a gang member pointed a gun at their car defendant and one of the others fired shots toward the gang member. Convicted of felon in possession of a firearm, the state court sentenced him to 4 years in prison consecutive. (PSR ¶ 53.) Released from this sentence in March 2005, defendant had problems on supervision, including a September 2005 disorderly conduct citation (PSR ¶ 54), but avoided revocation (PSR ¶ 53). Finally, in 2008, he received another disorderly conduct citation.[1] (PSR ¶ 55.)

The PSR indicated that defendant had been in a relationship for about 10 years, and his girlfriend remained supportive. (PSR ¶ 71.) He had two young children with two other women. (PSR ¶ 73.) Defendant dropped out of high school but reported obtaining a GED in state prison, which could not be verified. (PSR ¶ 83.) The PSR reported some work record, including employment as a car mechanic earning cash from 2006 to 2008, which could not be verified (PSR ¶ 86), and brief stints in factories in 2002 and 2003 (PSR ¶¶ 87-88).

At the sentencing hearing, I adopted a base offense level 32 under U.S.S.G. § 2D1.1(c)(4) (2009) based on a drug weight of 5-15 kilograms of cocaine, added 2 levels for

---

[1] According to the citation in that case, on 4/23/08 at 4:58 p.m., a squad was dispatched to a subject with a gun complaint, with the caller stating several males were in the street yelling and waving a gun. The officer observed several males yelling at each other and began to argue with officers when approached. Defendant was the person standing in the street and creating a disturbance. (PSR ¶ 55.)

3

firearm possession under U.S.S.G. § 2D1.1(b)(1), and 3 levels for aggravating role in the offense under U.S.S.G. § 3B1.1, then subtracted 3 levels for acceptance of responsibility under U.S.S.G. § 3E1.1, for a final level of 34. Coupled with defendant's criminal history category of III, level 34 produced a range of 188-235 months.[2]  I then granted a 3 level reduction on the government's U.S.S.G. § 5K1.1 motion, which dropped the range to 135-168 months, and imposed a sentence of 144 months.

**II.**

In his § 3582(c)(2) motion, defendant relied on guideline Amendment 782, which reduces his base offense level from 32 to 30.  See U.S.S.G. § 2D1.1(c)(5) (2014).  The Commission designated Amendment 782 for retroactive application, U.S.S.G. § 1B1.10(d), and substituting the new base offense level drops defendant's range from 188-235 to 151-188 months.  Although the court is generally forbidden to reduce a sentence to less than the minimum of the amended range, U.S.S.G. § 1B1.10(b)(2)(A), the court may in a substantial assistance case reduce the sentence to a term comparably less than the amended range, U.S.S.G. § 1B1.10(b)(2)(B).  Applying the same 3 level reduction from the amended range here produces a new range of 108-135 months.  However, because the government did not move for a sentence below the statutory mandatory minimum under 18 U.S.C. § 3553(e) at the original sentencing, the functional range would be 120-135 months.  Defendant asked for a reduction to 120 months.

In its response to the motion, the government argued that I should decline to reduce the sentence because of the seriousness of the offense and defendant's violent background.  The

---

[2]Defendant also faced a statutory mandatory minimum of 10 years under 21 U.S.C. § 841(b)(1)(A).

4

government stressed that defendant previously received an early release from prison – paroled after serving just 2 years of the 6 year sentence imposed on the 1996 cases – and less than seven months later got involved in another shooting incident. In his reply, defendant disputed that his violent past suggested a risk to the public such that his sentence could not be safely reduced. He noted that he had been in custody for more than six years, and the government's argument allowed no possibility of change.[3]

Because neither side had commented on defendant's post-sentencing conduct, I obtained a report from the U.S. Probation Office regarding defendant's performance in prison. In that report, the Probation Office indicated that defendant was designated to FCI-Edgefield, with a projected release date of 10/15/19 via good conduct time. He was enrolled in GED programming through 4/29/15, with records noting he maintained satisfactory progress. In addition to GED programming, in 2012 he took a Computer Lab class and in 2012 and 2013 an AIDS awareness class. The report indicated he was not currently assigned to any work detail and was classified as Administrative Detention. The report also detailed numerous disciplinary actions: 11/7/11 Phone Abuse, resulting in 15 days disciplinary segregation and 1 month loss of privileges; 5/14/13 Phone Abuse – Disrupt Monitoring, resulting in 27 days disallowance of good conduct time, 30 days disciplinary segregation, and 6 months loss of privileges; 2/21/15 Phone Abuse – Disrupt Monitoring, resulting in 27 days disallowance of good conduct time and 3 months loss of privileges (consecutive); 2/22/15 Phone Abuse – Disrupt Monitoring, resulting in 27 days disallowance of good conduct time and 3 months loss of privileges (consecutive); 3/5/15 Phone Abuse – Disrupt Monitoring, resulting in 27 days

---

[3]He also disputed the logic of the government's argument that his early release from prison on the 1996 cases caused his behavior in 1999.

5

disallowance of good conduct time and 3 months loss of privileges (consecutive); 3/14/15 Phone Abuse – Disrupt Monitoring, resulting in 27 days disallowance of good conduct time and 3 months loss of privileges (consecutive); and 4/16/15 Phone Abuse – Disrupt Monitoring, resulting in 27 days disallowance of good conduct time, 27 days forfeited earned statutory good time, and 6 months loss of privileges (consecutive – to be restored 10/14/16).

In its supplemental response, the government indicated that defendant's performance in prison, including seven disciplinary actions, further supported its opposition to a sentence reduction. The government argued that defendant's record in prison demonstrated that he had not learned respect for the law, and that he remained a danger to the public based on his past record and prison conduct.

In his supplemental memorandum, defendant indicated that he had recently been re-designated to FCI-Estill, a medium security facility, that he was to be employed in that institution's kitchen, and that he was on the waiting list for GED programming. Regarding the prison disciplinary matters, defendant noted that the probation report did not detail the specifics of those incidents, but the title of "phone abuse" suggested that they were relatively minor. Whatever their level of severity, the report confirmed that he had already been punished by loss of good time for those violations. He argued that a term of 120 months today is the reasonable equivalent of the original 144 month term, and that a 10 year sentence would still suffice to satisfy the purposes of sentencing under 18 U.S.C. § 3553(a). Finally, defendant argued that public safety would not be jeopardized by a 10 year sentence; whether the sentence was 12 years or 10, he would eventually be released after serving a lengthy term which incapacitated him for an extended period.

6

**III.**

In ruling on a § 3582(c)(2) motion, the court shall consider the 18 U.S.C. § 3553(a) factors, shall consider the nature and seriousness of the danger to the community that may be posed by a reduction, and may consider the post-sentencing conduct of the defendant. U.S.S.G. § 1B1.10 cmt. n.1(B). Section 3553(a) directs the sentencing court to consider the nature and circumstances of the offense, and the history and characteristics of the defendant; the kinds of sentences available; the applicable sentencing guideline range; any pertinent policy statements issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities; and the need to provide restitution to any victims of the offense. The statute requires the court to impose a sentence that is sufficient, but not greater than necessary, to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed correctional treatment.

The offense here was undoubtedly serious. Although a sting operation, the record demonstrated that defendant intended to go through with the robbery, that he had no qualms about engaging in this dangerous conduct, and that he even considered turning on the agent and robbing him too. Defendant planned and organized the robbery, recruiting others, knowing that they would likely face armed resistance.[4]

Defendant's history of violence, including two prior cases involving shootings, also suggests that a substantial prison sentence is needed to protect the public, and to deter, as the

---

[4] The agent told defendant that the supplier would be accompanied by at least one man with a gun. (PSR ¶ 12.)

6 and 4 year sentences he received in state court failed to correct his behavior.[5] The PSR did report some employment history, as well as positive statements from his sister and girlfriend. He did not, at the time of the original sentencing, appear to have significant correctional treatment needs; nor did he owe restitution. However, defendant's post-sentencing conduct does not my improve my assessment of his history and characteristics. Although he has participated in GED programming and completed a few courses,[6] he has also been disciplined seven times, including four times this year alone. Although none of the prison violations appear significant, they do suggest disrespect for the law.

On the other hand, one significant factor has changed – the sentencing guidelines calculation. As discussed above, I imposed a sentence within the original guideline range (after the § 5K1.1 departure). The government argues that the change to the drug trafficking guideline's quantity table means little here, as the seriousness of the offense hinged on defendant's violent intent, not the number of kilograms the agent said his supplier possessed. As defendant notes in reply, however, the robbery guideline calculation – which includes enhancements for weapon possession, attempted theft of a controlled substance, and aggravated role in the offense (PSR ¶ 28-34, producing an adjusted level of 27) – actually calls for a lower offense level than the drug trafficking guideline (under both the 2009 and 2014 versions). Defendant also notes that the amended drug trafficking guideline calculation continues to capture the aggravating circumstances of weapon possession and role in the

---

[5]Defendant committed the second shooting less than seven months after his parole on the first shooting case. I also cannot ignore defendant's statements to the undercover agent regarding other drug dealer robberies defendant allegedly committed.

[6]As indicated above, defendant told the original PSR writer that he had his GED.

8

offense. The Sentencing Commission has in its policy statements chosen to make Amendment 782 retroactive, and granting a reduction consistent with that amendment could serve to reduce sentence disparities.[7]

Considering the seriousness of the offense and defendant's role in it, his significant prior record of violence, and his less than sterling post-sentencing conduct, I decline to reduce the sentence to 120 months. However, in recognition of the role of the guidelines in the original sentencing decision, in order to give some effect to the Commission's decision to amend the guidelines, and in order to reduce sentence disparities, I will grant the motion in part, reducing the sentence to 135 months, the high end of the amended guideline range. This sentence will recognize the aggravated nature of the offense and the need to protect the public and deter.

**IV.**

**THEREFORE, IT IS ORDERED** that defendant's motion (R. 272) is **GRANTED** in part, as stated herein. A form Order will follow.

Dated at Milwaukee, Wisconsin, this 15th day of September, 2015.

/s Lynn Adelman
LYNN ADELMAN
District Judge

---

[7]The government's agents effectively determined the base offense level in this case by claiming the supplier possessed 14 kilograms of cocaine; there is no indication that defendant would have declined to participate in the robbery had the supplier possessed money (or some lesser amount of cocaine). This is not to suggest sentencing manipulation, see United States v. Turner, 569 F.3d 637, 641 (7th Cir. 2009), but merely to acknowledge that because the government's construction of this sting resulted in the application of U.S.S.G. § 2D1.1(c) it would seem appropriate to give defendant some benefit from the Commission's reduction of that guideline.